The next matter, No. 24-1193, MAPFRE-PRAICO Insurance Company v. Financial Oversight and Management Board for Puerto Rico. At this time, would counsel for MAPFRE please introduce himself on the record to begin? I would like to reserve three minutes for rebuttal. You may. Thank you. May it please the Court, my name is Jose A. Sanchez-Hirona. I represent the appellant MAPFRE-PRAICO Insurance Company, the surety. The construction of public projects in Puerto Rico would be chaotic without access to surety bonds. Therefore, protecting the economic stability of sureties is in the best interest for Puerto Rico. In this case, more than a decade after the surety ordered its guarantee under the bonds to complete a massive police station and multiple public housing projects of the Commonwealth, the Oversight Board is still refusing to release the amounts withheld in the bonded projects, which are the surety's collateral. Here in this case, the court of dispute is the expiration of the debtor's deadline to object to the surety's claims without them filing an objection to the surety's claims. Under paragraph 87 of the confirmation order, it states clearly that if asserted surety claims are not objected Can you tell me the current posture of this? Is the matter still in ADR at this point? It's still in ADR. It's still in ADR.  And so their argument would be that they get an extension of time once it comes out of ADR, if it ever comes out of ADR, to file an objection. That's their argument, Your Honor, but that argument is flawed. Right, but I'm interested in the finality of this. So it strikes me that where we are right now is a pre-objection period. So they might object. They might not object. We don't know yet. We don't know whether it will come out of ADR, might settle, might not. So it strikes me we have to figure out what is the proceeding. And you're saying the proceeding is sort of the denial of your request that they don't get an extension of time. Yes. Our position is that the confirmation order clearly established the term. Under paragraph 87 of the confirmation order, it clearly stated that in terms of claims for a surety, that they have to object them before the period established for objections under paragraph 82.1 of the plan. And that period expired on September the 1st of 2023 without them filing an objection. Therefore, our position is that that period expired and that they don't have any rights. They have to pay the claim. But, counsel, I think what Judge Aframe is wondering about, which I'm wondering about too, is what is the final order that you are appealing? Because your opposing counsel has said that we don't have jurisdiction because there's no final order here. So in your view, what is the final order? In cases in bankruptcy, in terms of jurisdiction, the judicial unit is discrete disputes, not the finality of the case. In this case, there was two discrete disputes that were finally resolved by the court and that can no longer be litigated in the district court. The first one is that the claims could be transferred into ADR. And the second one is that the term to object claims did not apply in ADR. Those are the two discrete disputes that were already decided in this case that can no longer be litigated in the district court. So they are final and we respectfully submit that this court has jurisdiction because those discrete disputes, according to ENRESACO, which is a claim for this circuit, it's stated that whenever discrete disputes are finally resolved in bankruptcy cases, the appeals court has jurisdiction. In the ENRESACO claim, it was an insurance claim, and the court determined the priority of the claim. And there were still remaining controversies regarding that claim. And the court stated that the ---- But can you reframe this as it's all just antecedent skirmishing to whether they're going to object to your claim? I'm sorry? Can't you reframe? I mean, you framed it in a certain way. But I think another way to think about this is all of these are skirmishing about how much time they have to do something. And the something is object. And they haven't yet decided whether to object or not. So why wouldn't that be the time, if they do object, which they may or they may not, for you then to say that objection is illegal and here are the reasons. And so some of them have been decided. You may have other ones that you may have to raise. And the judge then would say, no, all of those are rejected, the ones I rejected before, the ones I reject today. And that objection is fine. At that moment, it seems to me you might think of it as the discrete unit is the fact of the objection, which then would trigger a trial and a hearing and whatever else happens after. Why is that the wrong way to think about it? Because in the plan, there was a term established to file objections. And in the confirmation order, the judge stated clearly that if they didn't file the objection within that term, that the claim would be payable pursuant to Section 502A of the Bankruptcy Code. So when that term expired, the surety has a right under Section 502A of the Bankruptcy Code. If you're right. If you're right. But you might not be right. I don't know. But that's if you're right. But my question is, it's not about who's right or who's wrong. It all seems to me to be pre-skirmishing about whether they will and can file an objection. The issue is whether they can. And if they cannot, the case is over. And if they don't, the case, or at least, is over. They can no longer file an objection. That's the issue. That's why we're here. What if they do? What if they do? Yeah. If they can't file an objection. What if they file an objection? What would you do? As a matter of fact, they filed an objection. What if they file a later objection? What would you do? If they file a later objection? Yeah, out of time. You're saying it will be out of time. They can't do it. What if they do? What would you do? Well, I can no longer litigate the matter that is expired. That's why we're here. Obviously, if you decide that they can't do it, then I guess we'll answer that. Counsel, can I go back to the first discreet issue that you said was involved here, which I think you framed as could your claims have been transferred to ADR at all? Yes. And I think one of the things that I wanted to ask you about is, and I think this is what the district court focused on, why do you think, let's assume that is a discreet issue, why do you think it was unreasonable for the claim against the Commonwealth to be transferred given that the proof of claim form that your client filled out said that the unsecured portion of the claim was TBD? So given that it said that, what is your argument about why it's unreasonable? First of all, in Paragraph 7B of the ADR procedure states clearly that secure claims are not subject to ADR procedures. We filed two claims in this case, one against the Commonwealth and one against the PBA. The one against the Commonwealth is completely secured and the one against the PBA is partially secured. But I think what the district court was focusing on was if you look at the first page, the actual proof of claim form, you said the unsecured portion was TBD. Yes. And so that indicates, I think a reasonable reading of that is that there is some unsecured part of the claim. So then why in your view is it unreasonable to rely on that representation on the form? It's unreasonable because first of all, even assuming for argument's sake that TBD means to be determined, which that hasn't been established. That was inferred by the court. Nothing has been established with respect to that. Even assuming that that's true, all that would mean is that the claim is unliquidated. Unliquidated claims fall within the definition of the Bankruptcy Code for claims. And if they are a claim, then they are governed by Section 502A of the Bankruptcy Code, which states that they have to file an objection. Otherwise, it is deemed allowed. And they never file an objection. That's first. Second, on the merits, the court's determination, that was a mischaracterization of the claims as partially unsecured because the court didn't consider that in the POC form, the surety reported a claim of $5.2 million secured by a UCC lien and by a preferential right of subrogation over all contract proceeds in possession of the Commonwealth. A UCC lien over all contract proceeds means that if the Commonwealth has not paid anything under the contract, then the lien is for the complete amount of the contract. And if they have paid half, the lien is for half. But the court didn't take into consideration that. The court didn't take into consideration the documents supporting the claim, which included a general agreement of indemnity. So your point is the cover page says TBD, but some of the supporting documents support the idea that it's a fully secured claim? Not only the description, the description, the information given in the POC form pointed to a secured claim, but the documents supporting the claim as well as the explanatory documents do. I mean, we included a general agreement of indemnity where they're assigned to the surety all of its rights under the contract, all of the payments due under the contract, all of the causes of action under the contract. The POC is also supported with evidence of perfection of a lien over that property. Also, they included a supplementary statement including a breakdown of all amounts paid by the surety and all amounts retained in each and every one of the projects. Also, it included causes of action which were assigned to the surety. All of them are subject to the first priority lien that was perfected in this case. Counsel, I think part of the dispute and what makes this case hard in my view is your opposing counsel saying we have hundreds of thousands of claims submitted. And so we need to review them relatively quickly to make initial decisions such as whether to send it to ADR. And your argument is if somebody had taken the time, or at least this is the way I understand your argument. You can tell me if I'm wrong, but if someone had taken the time and fully inspected all of the attachments and exactly what you said, they would have seen that the claim was fully secured. But again, on one part of the proof of claim form, you put TBD under the amount of the unsecured portion. So specifically, that's what the form says and you say TBD there. And so your opposing counsel says it wasn't unreasonable for us to just rely on that. We're processing hundreds of thousands of claims and send it to ADR. So I just want to raise again, that seems to me that the district court decided why is that unreasonable given the amount of claims? To say TBD, I mean, the question said what was the amount of the unsecured claims, TBD. If you assume that is to be discussed, that doesn't mean, that's not an allegation that is unsecured. All the other information in the proof of claim clearly established that it was a completely and fully secured claim. Even if there are any doubts. They construed it that way. Do you understand it to mean, let's just assume that's how they read it. Maybe they were wrong. Maybe they could have figured out something else. But if you have secured and unsecured a claim, is it okay to send that to ADR because you might negotiate how much is secured and how much is unsecured? No, because paragraph 7B of the ADR procedure states that secured claims cannot be subject to transferring to ADR. But is the judge abusing her discretion to say, okay, I know that's the rule. But here there is room to negotiate because it's not clear what's secured and what's not secured. So going to ADR makes sense because you might get the people to talk about how much is secured and how much is unsecured. In section 506A of the bankruptcy code establishes that partially secured claims are divided, are split, bifurcated into two claims. One for the secured claim for the amount of the collateral and the unsecured deficiency for the excess that is not covered by the collateral. So the surety has a right to rely upon section 506A and its secured claim has to be honored and cannot be treated as an unsecured claim. If the claim is transferring to ADR procedures, then that would be an unfair treatment that would be precluded under section 1122 of the bankruptcy code which precludes the debtor to give different treatment to different claims. In this case, none of the secured claims were sent to ADR because there was a clear prohibition of subjecting secured claims to ADR. So if you're going to decide that the secured claim of the surety has to go to ADR, that would be an unfair treatment precluded under section 1122A of the bankruptcy code. Thank you, counsel. So basically... Counsel, I think you may be past time, but you reserve time for rebuttal, right? I'm sorry. No problem. Thank you very much. Thank you, counsel. At this time, would counsel for the appellee please introduce himself on the record to begin? Good morning, your honors. May it please the court. My name is John Roberts from Proscow Rose, and I represent the Financial Oversight and Management Board for Puerto Rico in its capacity as the Title III representative of the Commonwealth of Puerto Rico and the Puerto Rico Public Buildings Authority. The issue in this appeal is whether the Title III court properly interpreted its own order confirming the Commonwealth's plan of adjustment when it held that the deadline to object to appellant's proof of claim has not expired. The Title III court's decision was plainly correct, but before I explain why, I want to address the threshold question of appellant jurisdiction that your honors had raised because the order being challenged here is not final, and so the appeal therefore should be dismissed for lack of appellant jurisdiction. The Supreme Court, in its Ritson and Bullard decisions, explained that a final order in bankruptcy is one that alters the status quo and fixes the rights and obligations of the parties. This order does neither. Prior to this order being issued, the appellant had proofs of claim against the Commonwealth and PBA that required resolution. After the order, the appellant still has claims against the Commonwealth and PBA that require resolution. Nothing changed. The order neither allowed nor disallowed the claims, and it did not determine the value of the claims or their priority. All of those issues remain to be decided below. Counsel, though, why hasn't it changed the status quo, if that's the exact language that the court has talked about? Because it seems that the claims are now in an ADR process, and opposing counsel is saying they shouldn't have been submitted there, and they've been penning there for quite a long time, and so they're now in a situation where, in their view, they should have been paid a very long time ago, and they've been channeled into a process where it seems like there's no deadline for it to be resolved or for payment to be determined. And you can tell me if I'm wrong or if there's an understanding that ADR has to end at some point, but that does seem to be a big difference between getting what one is owed several years ago versus being in a process that has an indefinite timeline. So a couple things there. Just factually speaking, there are deadlines in the ADR procedures. So the ADR procedures are in the record. I think they start around page 788 of the appendix. And for each stage of ADR, there are deadlines. There is an exchange of offers. There is a mediation, and there is potentially arbitration, but there are deadlines. So this idea that you're sort of in some limbo forever is simply not true. The fact of the matter in this case, Judge Aframe, you asked about the posture of this particular claim. So after these claims were submitted into ADR, the current ADR procedures, which are not in the record, they put the old versions. I'll tell you the DACA number. It's 28125-1. The current ADR procedures allow the board to make an information request because sometimes it's hard to even, you know, evaluate an offer to know what kind of a claim to know what kind of offer to make. And so we sent these information requests to appellant for both of their proofs of claim. Those have deadlines because, like everything in ADR, there are deadlines. They did not respond by the deadline. Instead, they ran to court and brought this motion, and then when the motion was denied, they brought this appeal. We also reached out to them separately in an effort to engage them in negotiation, and they never returned our messages. So just as a factual matter, this idea that, you know, they're in limbo forever, the reason that the ADR has taken as long as it has is because they have not engaged in the process. In terms of whether – Sorry, finish that. I was going to turn to the other question. Under Ritson Group, what is the earliest moment you think they can appeal, lawfully appeal? When their claims are allowed or disallowed because that's the – I mean, Ritson Group sort of rejects that idea and says, we're not going to wait until this whole thing has happened and it's been adjudicated because we may have to go back and undo all the adjudication, and that seems like a waste of time and effort. Well, I think what Ritson was talking about is you don't wait until the end of the entire bankruptcy case, right, which there's 180,000 claims, there was the fight over confirmation, which is now over, but you don't wait until all of that stuff is done before you start bringing appeals. You can – the concept of finality is more flexible in bankruptcy, but there still is this idea that it has to resolve a discrete proceeding within the case, and Ritson talks about there are certain orders that are not going to be final orders. I think they gave as an example an obvious one, which is if you ask for more pages on something. Well, they say an extension of time, and I guess I'm wondering – that's actually what they say, an extension of time. And as I read Ritson Group, I was wondering, is that what this is? No, this is – they want their claim to be allowed, right? That's ultimately the relief that they're asking for. That's the implication of their argument. They say, you missed a deadline, therefore our claim is allowed. And what Judge Swain said was, I'm not agreeing with that. I am rejecting that one argument for why your claim should be allowed. Now, they can have other arguments, and I'm sure they do, and all of those arguments about the claim should be resolved before there's any finality. That's the test. One of the things that the Ritson and Bullard cases talk about is, you know, the bankruptcy courts resolve disputes that could have arisen outside of bankruptcy. Well, here the dispute that could have arisen outside bankruptcy is how much do we owe them. That's the relevant dispute, and that has not been fully resolved yet. They're arguing about a deadline within the bankruptcy case. That's not something that would arise outside of bankruptcy. So in your view, they can't appeal based on the fact that they've been diverted into a process that they think they should never have had to participate in. You just don't think that qualifies as a discrete issue, even if it takes several more years for their claim to be resolved? Again, I don't think it will take several more years. But, I mean, from when they say that the claim should have been allowed, I think it's already been a year and a half. I mean, you can tell me if I'm wrong, but it's not an insignificant delay. So I guess I'm just wondering, you know, do you have anything, any precedent, case on point, that says that in this situation they just can't appeal when they've been diverted into a different process? This is all just case management issues, right? There are something in the order of 180,000 claims in these Title III cases. Judge Swain has created procedures for resolving those claims. The claim has not been resolved yet. The fact that they're in one procedure versus another, that's not finality. That's just how we're getting to a final answer. It's the route to which we get there. And that's never been recognized as finality in any of the cases. I want to talk about the cases for a second. You know, the Giles decision that we cite in our brief, I think, is directly on point here. So there the bankruptcy court rejected – I'm sorry, counsel, just before you go, but for the two references to TBD, this could be a very different case with respect to what you're arguing now, couldn't it? If they gave a specific dollar amount for the secured portion and unsecured said there is no unsecured claim, and it was nevertheless still sent off to ADR. So that is certainly not the facts here, to be clear. Would the outcome be different? I don't think so, because if you read the plan and the confirmation order, paragraph 42 of the confirmation order applies when a claim is transferred to ADR. It doesn't say anything about correctly transferred to ADR. So in your hypothetical, which is not our case. What if it's abusively sent to ADR, which I'm trying to set up? Yeah, it's – again, not the facts here. We, as Judge Wilkeman noted, we absolutely could rely on their own papers where they say TBD. If it were – I'm not sure what even that would mean, abusively put into ADR. I mean, the way that ADR works is there's nothing mandatory that you have to do there. You can reject the counteroffer and say that you don't – or reject the offer, rather. You can say you don't want to arbitrate it, you want to go back to the Title III court, and you're back there in no time. If we know that it's a secured transaction and we know the amount, what's going to be arbitrated? What's going to be – I'm sorry, I don't understand the question. What's the alternative dispute resolution for a claim where we know the sum's certain and we know that it is secured? Those are – those issues are not resolved in ADR. Correct, but what if it's sent to ADR anyway? I'm not sure how that would play out. I would think that the resolution would be for the party who filed the – It's not a final order under your description here, but what is it? The – what should happen in your scenario, which, again, is not our case, is that the party who files the proof of claim, I guess, could make a motion to be brought back into the Title III case or something like that, in which case, you know, maybe that gets granted or not, and then they're back in the Title III case. But Paragraph 42 would still apply there because the claim went into ADR and then it was transferred back. There's nothing about improper transfer, and to be just eminently clear, that's not what happened here. No, but that's the route that I was looking for, so thank you. But just to finish that, and I understand you're saying that's not the facts, but I think for the jurisdictional question, we have to think about it more broadly. So you're saying that if it's absolutely clear it's sent to ADR incorrectly, a party makes a motion for it to be returned to the Title III court and it's denied. You're saying that that just can never be appealed. All of this can be appealed following a final order. No, I understand. I mean before. That is our position. The relevant proceeding is resolving whether the claim is allowed or disallowed. If you look at 28 U.S.C. 157, that's listed as a core proceeding in bankruptcy. The written case says that's not necessarily dispositive, but it's pretty persuasive that Congress identified that as the unit, the judicial unit. So the judicial unit that matters here is the allowance or disallowance of the claim. And I think the Giles case that we cite in our brief supports that because there was a bit of the inverse of the situation, but basically the bankruptcy court rejected the debtor's argument that a proof of claim was submitted too late. And so the debtor was saying the claim should be disallowed because it was too late. And the court here held that the order was not final because although the bankruptcy had rejected one argument for disallowing the claim, it didn't conclusively determine whether the claim would be allowed or not or the amount of the allowed amount. So this case is no different. Here the Title III court merely rejected one argument that appellants made for why their claim should be allowed, but it didn't decide ultimately whether it would or would not be allowed or in what amount. So under Giles, until those questions are answered, there is no final order. Are there any other questions on jurisdiction? Because I want to turn to something that Judge Howard asked about with the papers here. Because I also want to clarify something about what was actually submitted here. So in addition to the TBD form, which pretty clearly suggests strongly that there was an unsecured element and a secured portion of the claim, or at least that's what they were asserting, they say, well, you should have turned to, it ends up being page 2728 of the appendix. They said, well, you should have looked at that and done a bunch of math and figured out that our claim was fully secured. And they keep citing this number. It's like $6.7 million or something like that. And they cite to this page 27. That number is nowhere in the papers. That number of $6.7 million of their supposed security interest. And all that those pages say on pages 27 and 28 is that this is the amount of money, in their view, that the housing authority owes to the contractor. That's all it says. So I understand that in some situations a surety stands in the shoes of the contractor and may be able to pursue those claims. But it doesn't mean the claims are secured. That's just not right. And at most they might be secured up to the point of the amounts retained under the contract. There's the Pearlman case and the Segovia case from this court talk about that. So maybe the retainage amounts, they're secured. But that doesn't add up to their $5.3 million claim. So even if you were to turn all the pages, which we were not required to do, in order to determine whether they were asserting a secured claim or not, even their own documents don't show or no one reading it would have any reason to believe that their claims were fully secured because they're not. So that's another reason why what we did was perfectly appropriate in transferring the claims into ADR. They talk about... But you should disaggregate the claim. You should disaggregate the secured part from the unsecured part. Yeah, so there is nothing in the law that requires that. And, you know, again, as a matter of case management, the way that this case is being managed, you file a proof of claim. And in Box 10, you talk about secured portion, unsecured portion. And that is the judicial unit that is then resolved by the Title III court. So am I right? I mean, I don't know much about how this really works. So am I right to say when you have a mix of secured and unsecured that arise from the same underlying contract, that there can be negotiation about which part is secured and which part is unsecured? Or does that happen? I don't know everything that happens in ADR. Obviously, there's 180,000 claims. But there is certainly, as Judge Swain said, if you read her own order, right? She's interpreting her own order. There's no reason why you can't send a claim writ large into ADR and try to resolve the unsecured portion in ADR. So that's what happened here is they asserted a claim, partly secured, partly unsecured in their view. And as Judge Swain said, there's no reason why that claim could not be transferred into ADR. This idea that we had to somehow separate them out into two claims, nothing in the law requires that, nothing in the Bankruptcy Code, nothing in the case management orders. And, in fact, it would just make the case even more unmanageable, right? We already have 180,000 claims. Now they're suggesting that Judge Swain should have divided them into even more. This is all case management decisions that Judge Swain rejected. The last thing I just wanted to point out, this idea that we are treating NAIRSA differently under 1123A4 is just not right. We're nowhere near the point at which we're treating their claims. This is just purely how the claims are being resolved. 1123A4 has nothing to do with anything. I'm not going to hold you to this because it's a question outside the record. But just generally speaking, in a Chapter 11, well, probably a Chapter 7, but with a business in bankruptcy and you've got a claim, something like this where it's not clear whether part of it's secured, unsecured, how much is, so the parties state their positions. They may or may not negotiate. They typically do. Somebody could, if they can't agree, somebody could bring an adversary action within the bankruptcy. The result of that action, probably a final order, generally speaking, but if that action isn't brought, nothing's final at that point. But isn't that how it typically works? Yes, that's absolutely right. And other disputes get resolved through objections, and when the objections are then litigated in front of the Title III judge, there will be a final order with respect to that specific proof of claim. Whether it's through an adversary proceeding or a final order in resolving an objection, there will be finality at some point. We're just not there yet. Counsel, can I just ask you one other practical question? So are all of the claims that were channeled to ADR, they're just all in ADR right now and then they'll all come out at the same time? Or does some, how is it just working practically? Since you said you asked them for additional information and they haven't responded, why is it still in ADR one and a half years later? I'm just trying to understand what's actually happening. So for example, so their PBA claim, when they failed to respond to our information request, under the new ADR procedures I gave you the docket number, we're allowed to object on that ground. So we actually did object at that point because they hadn't given us the information. That has all been stayed pending this outcome of this appeal. So sort of everything is on ice awaiting a decision here, but as soon as we get a decision, I assume that things will move fairly quickly through ADR. In terms of how it works, just generally everything is on its own schedule. The different claims are, they've been sent to ADR at different times, and then it just, if you're doing mediators and arbitration, it just ends up on different schedules. But certainly many of them are being resolved. Thank you. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellant please reintroduce himself on the record? He has a three-minute approval. Thank you, Mr. Sanchez, on behalf of Manfred Breiko. Your Honor, it took the Oversight Board three years and five months to transfer the claim into ADR. The ADR proceedings were instituted in April of 2020, and they had until September the 1st, 2023 to file objections. It took the claim of the Commonwealth, they transferred, I mean, three years and five months, it's 1,248 days. On the 1,248th day was when they transferred the claim to ADR, on the last possible day after three and a half years. Okay? They state that we didn't answer an interrogatory. The claim, I mean, we go back, Paragraph 87 only applies to surety claims. It doesn't apply to any other claims. The Paragraph 87 doesn't say that the claims of sureties can be transferred into ADR procedures. If this Court were to determine that they could actually be transferred into ADR procedures, that would mean that the Paragraph 87 is superfluous because it doesn't bring anything new. The Court might as well just put anything in there. The Paragraph 87 only applies to surety claims, and it says clearly that the term to object was Paragraph 82. The deadline set forth in 82.1 of the plan. It didn't say any other deadline. That's the only deadline applicable to sureties. If you think that the deadline applicable was Paragraph 42, then you're treating it like any other claim, and all of a sudden, Paragraph 87, you might as well just put anything there because it just turned it completely superfluous. So the claim was not eligible for ADR. Therefore, all the interrogatories, I mean, after six years of case, on the date when the term to object was about to expire, they decided to transfer the claim into ADR. So, you know, clearly, they're avoiding the term to object to the claim. They're using the ADR procedures to avoid that process. Also, counsel said that progress payments are not subject to the lien of the surety. That's not correct. According to the case law of this circuit and every other circuit, clearly the permanent decision was later extended to progress payments, not just retainers. So... Thank you, counsel. Thank you very much. Thank you, counsel. That concludes argument in this case.